NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-378

LEE J. STAGG, ET AL.

VERSUS

NATIONAL AUTOMOTIVE INS. CO., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 213,936
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

AFFIRMED.

James Earl Calhoun
Assistant Attorney General
Louisiana Department of Justice
P. O. Box 1710
Alexandria, LA 71309
Telephone:  (318) 487-5944
COUNSEL FOR:
     Defendant/Appellee - State of Louisiana, DOTD

**Victor Herbert Sooter**
**Sooter & Associates**
**P. O. Box 1671**
**Alexandria, LA 71309**
**Telephone:  (318) 448-8301**
**COUNSEL FOR:**
      **Plaintiffs/Appellants - Lee J. Stagg and Molly Kelly Stagg**

**THIBODEAUX, Chief Judge.**

Plaintiffs, Lee and Molly Stagg (The Staggs), appeal the judgment pursuant to a jury verdict awarding them special and general damages for injuries they sustained as a result of being hit broadside by the defendant, Connie Herrin (Ms. Herrin). The Staggs assert that the damage award was not reasonable and should be greatly enhanced.

The State Department of Transportation and Development (DOTD), a co-defendant with Ms. Herrin, also appeals the jury verdict claiming that the Staggs did not prove Ms. Herrin's liability. The DOTD claims that if Ms. Herrin is not liable, then the suit against the DOTD must be barred by prescription.

For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUES

The Staggs assign the following four issues as errors committed by the jury and judge in the trial court:

1.  the jury's damage award was manifestly erroneous because it did not contemplate that they were entitled to a legal presumption of medical causation.

2.  the DOTD did not satisfy its burden of proof to rebut the legal presumption of medical causation regarding Mr. Stagg's underlying but asymptomatic and undiagnosed coronary artery disease.

3.  the jury's award of damages was manifestly erroneous and clearly wrong.

4.  the trial court judge was manifestly erroneous and clearly wrong in denying the Staggs' motion for judgment notwithstanding the verdict and motion for a new trial.

In its answer to the appeal filed by the Staggs, the DOTD asserts the following issues as errors committed by the jury and judge in the trial court:

1.  The Staggs failed to prove that Ms. Herrin was at fault in causing the accident.

2.  The Staggs' claim against the DOTD should have been dismissed because it had prescribed.[1]

II.

**FACTS**

On July 31, 2002, the Staggs were involved in an automobile accident in the City of Alexandria when Ms. Herrin failed to stop at the corner of Jackson and Nineteenth Streets, even though there was a stop sign directing her to do so. Ms. Herrin's vehicle struck the Staggs' vehicle, totaling the car and causing physical injury to the Staggs. Ms. Herrin claimed that the stop sign could not be seen because it was almost completely covered by tree limbs and shrubs. She lived only blocks away from the corner of Jackson and Nineteenth Streets. However, she claimed that she was confused and did not think she needed to stop.

Both of the Staggs were taken by ambulance to the hospital. At the hospital, x-rays and a CAT scan were performed on Mrs. Stagg. She sustained some contusions and abrasions, including a large hematoma to her scalp. However, the pain from her injuries was not that severe, as she stated that the pain was not bad enough for her to take the pain medication prescribed to her by the emergency room physician. She did undergo three weeks of physical therapy for an injury to her knee.

Mr. Stagg sustained two fractured ribs plus many contusions and abrasions. Mr. Stagg had undergone an MRI on the morning of the accident, but before the accident occurred, for severe back pain he had been experiencing. The accident exacerbated that pain and aggravated cervical and lumbar spine fusions he

---

[1]We note that the DOTD asserted issues of notice and ownership or garde which it did not brief; therefore, these assignments of error are abandoned. Louisiana Court of Appeals, Uniform Rule 2-12.4

had received in the past. He also had serious cuts in his face that required plastic surgery under a general anesthetic and an overnight stay in the hospital. He was released from the hospital the following day.

Approximately two to three days after returning home, Mr. Stagg began experiencing sharp pains in both of his forearms. He went to see his family doctor thinking the pains were related to the accident. His family physician, who had been treating Mr. Stagg for at least ten years, sent him to a cardiologist. Tests run by the cardiologist revealed that all four of the major arteries in Mr. Stagg's heart suffered from blockages of ninety percent or more. Cardiac by-pass surgery was performed on Mr. Stagg within twenty-four hours of his receiving this diagnosis. Apparently, Mr. Stagg had coronary artery disease but had experienced no symptoms that he knew of, nor had it been previously diagnosed.

The cardiac by-pass surgery was a success, but part of the incision in his torso refused to heal. Mr. Stagg had to undergo another surgery to debride that wound. After that surgery, he healed well.

Mr. and Mrs. Stagg sued his own insurance company, Ms. Herrin, her automobile insurance company, and the City of Alexandria as defendants on July 25, 2003. On September 29, 2003, the Staggs filed an amended petition adding the DOTD as a defendant.

The City of Alexandria filed a motion for summary judgment in which it argued that Jackson Street was a state-owned roadway; therefore, the DOTD had ownership of, and maintenance responsibility for, the stop sign on that roadway. The trial court granted the city's motion for summary judgment, dismissing it as a defendant.

3

A few days before the case was tried, the Staggs and the DOTD submitted a stipulation into evidence regarding agreements the two parties had reached on a number of issues. Included in the stipulation were the following:

3. **State Highway**. The State of Louisiana through the Department of Transportation and Development agrees and stipulates that Jackson Street, at its intersection with 19th Street (the "**intersection**"), is Louisiana Highway 1208-3 and is within the state highway system.

4. **Legal Custody** / **Guarde [sic]** / **Maintenance** / **Inspection, Etc**. DOTD further agrees and stipulates that:

(a) DOTD has the legal custody or guarde [sic] of La. Hwy 1208-3 and is responsible for construction, maintenance and repair of the portion of Jackson where the accident out of which this matter arose.

(b) DOTD has the legal responsibility for the installation, inspection and repair of all traffic lights and signs affecting the traffic proceeding on Jackson Street or approaching traffic from intersecting streets.

At the time of trial, two defendants remained: the DOTD and Ms. Herrin. The Staggs were asking the jury to award them well over half of a million dollars in damages for their injuries. The jury found that both of the defendants were at fault for the Staggs' injuries, assigning ninety percent of the liability to the DOTD and ten percent to Ms. Herrin. The jury awarded damages to both Mr. and Mrs. Stagg totaling $84,173.46.

Mr. Stagg was awarded $7,500.00 for physical pain and suffering; $20,488.00 for past medical expenses; $25,000.00 for mental anguish and emotional distress; $1,000.00 for lost wages; $8,000.00 for scarring and disfigurement; and, nothing for either loss of enjoyment of life or for loss of consortium due to Mrs. Stagg's injuries.

Mrs. Stagg was awarded $2,500.00 for physical pain and suffering; $4,185.46 for past medical expenses; $10,000.00 for mental anguish and emotional

4

distress; $5,500.00 for loss of consortium due to Mr. Stagg's injuries; and, nothing for either lost wages or loss of enjoyment of life.

A judgment in accordance with the jury verdict was signed by the trial court judge. The Staggs filed a Motion for Judgment Notwithstanding the Verdict (JNOV), or, in the Alternative, For a New Trial. They argued that the facts and evidence in the record pointed so strongly in their favor that no reasonable persons could have arrived at a verdict contrary to what they were asking for in damages. They specifically focused on the damages awarded to Mr. Stagg. The trial court denied their motion for a JNOV and their motion for a new trial. A devolutive appeal was then timely filed with this court, appealing both the judgment regarding damages and the judgment denying the motions for JNOV and for a new trial.

III.

## LAW AND DISCUSSION

### Standard of Review

It is appropriate to discuss the Staggs' assertion that the trial court was manifestly erroneous in denying their motion for a JNOV first because our decision on this issue has the potential to moot all other assignments of error.

### Denial of the Motion for JNOV

Louisiana Code of Civil Procedure Article 1811 governs the procedures to be used by courts regarding motions for JNOV, but it does not give the courts guidance on when to grant such a motion. The Louisiana Supreme Court clearly stated the criteria our court must use to evaluate a motion for JNOV.

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only

when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

*Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991) (citation omitted).

Our review of the trial court's denial of the Staggs' motion for JNOV is a two-part analysis.

The standard of review for a JNOV on appeal is a two part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Anderson v. New Orleans Public Service, Inc.*, at p. 832.

*Davis v. Wal-Mart Stores, Inc.*, 00-445, p. 5 (La. 11/28/00), 774 So.2d 84, 89.

This Court has elaborated on the standard that is applied in the first part of the two-part inquiry.

"A trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable persons could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper. The standard to be applied by the appellate courts in reviewing the grant or the denial of a JNOV is whether the trial court's findings in rendering the JNOV were manifestly erroneous." *Bertrand v. Air Logistics, Inc.*, 01-1655, p. 13 (La.App. 3 Cir. 6/19/02), 820 So.2d 1228, 1237.

*Mouhot v. Twelfth St. Baptist Church*, 06-1283, p. 3 (La.App. 3 Cir. 2/7/07), 949 So.2d 668, 670.

Therefore, we must decide whether reasonable people could have reached the conclusion that the jury reached based on the evidence in the record.

Three physicians testified at trial via videotaped and transcribed depositions regarding Mr. Stagg's injuries. Each of the physicians was specifically questioned about Mr. Stagg's coronary artery disease and what might have caused the need for cardiac by-pass surgery. All of the testifying physicians were in agreement that Mr. Stagg must have had some coronary artery disease, i.e., blockage of his cardiac arteries, before the accident that went undiagnosed.

Two of those physicians speculated that the pain and stress Mr. Stagg was experiencing, both from the accident itself and the injuries directly caused by the accident, could have possibly loosened plaque from other areas of Mr. Stagg's arteries which then became lodged in his cardiac arteries. They were attempting to explain how a person can have such serious blockages in all four of the major cardiac arteries and not have any symptoms.

Later testimony revealed that Mr. Stagg had diabetes. He also had a history of back pain before the accident. In fact, when the accident with Ms. Herrin occurred, he was returning from an appointment at which he underwent diagnostic tests including an MRI because he was experiencing such severe back pain. It was suggested that the diabetes and the back pain could have masked the symptoms of his coronary artery disease. The Staggs did not provide any evidence or testimony to refute this suggestion.

The Staggs argue that they were entitled to the application of a legal presumption of medical causation and that the jury should have applied this

7

presumption when crafting the damage award to Mr. Stagg. This presumption comes from the Louisiana Supreme Court in *Housley v. Cerise*, 579 So.2d 973 (La.1991). The legal presumption of medical causation can be applied by the factfinder if the plaintiff was in good health with no symptoms of injury or disease before an accident but soon after the accident a disabling condition presented itself. *Housley*, 579 So.2d 973. Also, there should be medical testimony showing that there is a reasonable possibility that the accident caused the injury. *Id*.

The Staggs contend that the legal presumption of medical causation should be applied specifically regarding the need for Mr. Stagg's ensuing coronary by-pass operation. They reason that if that presumption is applied, then no reasonable person could have given damage awards in the amounts that the jury awarded to Mr. Stagg.

However, the jury was instructed that they could apply the legal presumption if they felt that the facts of the case met the requirements for the application of that presumption. The jury heard all of the above-mentioned testimony from the three physicians testifying at trial. Reasonable minds could conclude that Mr. Stagg's need for coronary by-pass surgery could have been caused by his having coronary artery disease prior to the accident. Reasonable minds could conclude that the Staggs did not present enough evidence to allow the jury to conclude that the accident caused Mr. Stagg to need the by-pass surgery. Therefore, reasonable minds could decide that the legal presumption of medical causation did not apply.

Based on this analysis, the trial court correctly applied the JNOV standard because the facts and evidence did not preponderate so greatly in favor of the Staggs such that reasonable persons could not have reached the verdict announced by the jury.

We will now answer the second question in the two-part inquiry as to whether the trial court committed manifest error by denying the Staggs' motion for a JNOV. Under the manifest error standard of review, we cannot overturn the trial court's or the jury's finding of fact unless they committed manifest error or unless they were clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Even if we might have reached a different conclusion from the facts and evidence, we may not disturb the verdict and judgment on appeal. *Id*. Conflicts in the testimony, reasonable evaluations of credibility, and reasonable inferences of fact cannot be disturbed on appeal. *Id*. For the same reasons that we concluded that reasonable persons could have arrived at the same verdict as the jury in this case, we also conclude that there was no manifest error in the denial of the JNOV. The trial court was not clearly wrong in denying a JNOV on the issue of causation and damages based on the facts and testimony in this case.

**Denial of the Motion for a New Trial**

Louisiana Code of Civil Procedure Article 1972 guides a trial court in ruling on a motion for a new trial. A new trial shall be granted if the following circumstances are present:

Art. 1972. Peremptory grounds

A new trial shall be granted, upon contradictory motion of any party, in the following cases:

(1) When the verdict or judgment appears clearly contrary to the law and the evidence.

(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La.Code Civ.P. art. 1972.

An appellate court reviews a trial court's denial or grant of a motion for a new trial for an abuse of discretion. We find no abuse of discretion by the trial court in denying the Staggs' alternative motion for a new trial. None of the statutory elements are present in this case to warrant granting such a motion.

### Ms. Herrin's Liability and the Prescription of the Staggs' Claim Against the DOTD

The DOTD posits that Ms. Herrin's fault was not proven. The DOTD argues that because Ms. Herrin's fault was not proven, the claim against her must be dismissed, thereby causing the claim against the DOTD to prescribe for having been filed more than one year after the date of the accident.

Ms. Herrin admitted that she ran a stop sign. She lived in the neighborhood where the accident took place, merely blocks away, for at least a period of two years prior to the date of the accident. She stated that she was familiar with the streets in her neighborhood but was confused on the day of the accident as to which street she was actually approaching.

The record contains ample evidence for the jury to have found that Ms. Herrin was at least ten percent at fault for the accident. Because she was at fault, the DOTD's exception of prescription fails.

### Damages

Mr. Stagg urges us to raise the damages awarded to him by the jury because, he argues, the jury did not award damages commensurate to his injuries. Even if we would decide to give Mr. Stagg more or less in damages, as the reviewing court, we cannot disturb the jury verdict unless it shows an abuse of discretion.

The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993). Moreover,

> before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

*Coco v. Winston Indus., Inc.*, 341 So.2d 332, 334 (La.1977) (internal citations omitted).

*Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74.

Specifically, Mr. Stagg wants the damage award to reflect the medical expenses, physical and emotional pain and suffering, loss of enjoyment of life, scarring and disfigurement, and lost wages he incurred as a result of his heart surgery. He also argues that the jury should have awarded him damages for his loss of consortium with Mrs. Stagg due to her injuries.

The jury awarded Mr. Stagg medical expenses that it concluded related to the injuries he sustained as a direct result of the car accident, namely, the bills for his one-night hospital stay and the plastic surgery to repair the accident-related lacerations and wounds. Since it was reasonable for the jury to conclude that the need for the subsequent heart by-pass surgery was not caused by the car accident, it is then also not an abuse of discretion for the jury to decline to include those medical bills in his damage award.

11

The same reasoning is applied to the argument regarding the other damage claims Mr. Stagg wants compensated. A great deal of Mr. Stagg's claims for physical and emotional pain and suffering stem from the heart by-pass surgery. His claim for loss of enjoyment of life relates to his ability to hunt, fish, work hard, and lift heavy objects which can all be attributed to his heart condition.

He was awarded compensation for the scarring and disfigurement related to the lacerations to his face, arms, and hands that resulted from being thrown into the dashboard and the windshield of his car. The demand for more money to compensate for the scarring related to his heart surgery was not compensated because the jury did not conclude that it was caused by the car accident. Likewise, he lost only a few days of work because of the accident itself. The heart surgery kept him out of work for nearly a month.

It was not an abuse of discretion for the jury to conclude that Mrs. Stagg did not experience a loss of consortium. Most, if not all, of her claims for loss of consortium are related to the problems associated with her husband's by-pass surgery for which the jury refused to award compensation and which we have affirmed.

We conclude that the jury did not abuse its discretion by awarding Mr. Stagg $61,988.00 in damages for the injuries he sustained as a result of the car accident with Ms. Herrin on July 31, 2002.

IV.

## CONCLUSION

The legal presumption of medical causation can be applied by the factfinder if it is determined that the plaintiff was in good health before the accident and the subsequent injuries or illness manifested soon after the accident. There should also be medical testimony stating that there is a reasonable possibility that the accident caused the injuries. In this case, the jury reasonably concluded that this legal

presumption did not apply. Mr. Stagg had an underlying and undiagnosed heart condition. The heart by-pass surgery he underwent was not proven to be a direct result of the car accident.

A motion for a JNOV is reviewed in a two-part inquiry. First, the appellate court must determine whether the JNOV standard was correctly applied by the trial court. If reasonable persons could not reach a conclusion different than the one put forth by the mover, JNOV is properly granted. Since reasonable persons could have found, as the jury did, that the legal presumption did not apply and that Mr. Stagg did not prove that the need for heart by-pass surgery was caused by the accident, the trial court correctly denied the Staggs' motion for JNOV. Secondly, it was not manifest error for the trial court to do so.

There was more than enough evidence in the record to find that Ms. Herrin was at least ten percent at fault in causing the accident. The petition for damages naming her as a defendant was filed within one year of the date of the accident. She should not be dismissed as a defendant, and the case against the DOTD did not prescribe.

A damage award granted by a jury is reviewed by an appellate court for an abuse of discretion. If no abuse of discretion is found, the appellate court cannot modify the award. We find no abuse of discretion in the amount of damages awarded to Mr. Stagg by the jury.

The jury verdict and trial court judgment are affirmed in all aspects. The costs of this appeal are assessed against the plaintiffs, Lee and Molly Stagg.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.